CHICAGO WOOL CO. OF PENNSYLVANIA *v.* UNITED STATES (No. 2639)[1]

1. PARAGRAPH 1102, TARIFF ACT OF 1922—WOOL—"SCOURED"—"CLEAN CONTENT."

Paragraph 1102, Tariff Act of 1922, in the light of the definitions in paragraph 1101, provides for wool: (1) Shorn from the sheep without any cleansing, "in the grease;" (2) washed with water only on the sheep's back or on the skin, "washed;" (3) "Scoured;" and (4) "on the skin." No other wools are provided for in the wool schedule save those advanced beyond the scoured state. Consequently wool which has been scoured is such under the paragraph, whether or not it has been sufficiently scoured to fit it for general commercial use. As to all these wools, *except scoured*, the paragraph directs that duty be levied on the *"clean content:"* No deduction, then, may be made for impurities in scoured wool.

2. COMMERICAL DESIGNATION—"COLONIAL SCOURED WOOL."

Proof that wool is bought and sold as "Colonial scoured wool," and that it contains too much grease to constitute a good delivery of "scoured wool," though sometimes used as such, the witnesses disagreeing as to how much grease would be allowed in a good delivery of "scoured wool," does not show a commercial designation excluding it from classification as "scoured" wool, under paragraph 1102, Tariff Act of 1922.

United States Court of Customs Appeals, March 27, 1926.

APPEAL from Board of United States General Appraisers, G.A. 8997 (T. D. 40900)

[Affirmed.]

*Comstock & Washburn (J. Stuart Tompkins* of counsel) for appellants.
*Charles D. Lawrence,* Assistant Attorney General *(Fred J. Carter,* special attorney, of counsel), for the United States.

[Oral argument January 21, 1926, by Mr. Tompkins and Mr. Carter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

Six bales of New Zealand wool, imported at the port of Philadelphia, Pa., were classified by the collector as wool in the scoured state, and assessed for duty at 31 cents per pound under that part of paragraph 1102 of the Tariff Act of 1922, which reads as follows:

PAR. 1102. Wools, not specially provided for, * * * imported in the grease or washed, 31 cents per pound of *clean content;* imported in the scoured state, 31 cents per pound; imported on the skin, 30 cents per pound of *clean content.* (Italic ours.)

The importer protested that the duty should have been assessed on the number of pounds of clean content and that the collector should have made an allowance for the grease and foreign matter contained in the wool.

The Board of General Appraisers overruled the protest, General Appraiser Brown dissenting, and the importer appealed.

---

[1] T. D. 41485.

On the hearing before the board the importer submitted testimony from which it appeared that the importation was Colonial scoured wool and that such wools carried a shrinkage of from 5 to 20 per centum or even higher; that wool containing grease and foreign matter in excess of 3 per centum would not be considered as a good delivery of scoured wool unless it was "defined as a Colonial scoured wool;" that Colonial scoured wool contained from 5 to 20 per centum more grease than domestic scoured wool, but that wools such as that imported were always sold as Colonial scoured wools and were so designated; that one bale of the six imported showed a shrinkage of 12.37 per centum.

James H. Royer, one of the witnesses for the importer, however, testified that wool which had been scoured to the extent of containing only 2 to 3 per centum of grease was commercially known as clean wool or as *clean scoured wool.* When asked whether there was any difference between scoured and clean scoured wool in the trade, the witness answered that domestic scoured wools are just called scoured wools and by that was meant clean scoured; that the term Colonial when applied to scoured wool indicated that the wool came from Australia, New Zealand or the Cape Colonies in Africa; that Colonial scoured wool could be used for the same manufacturing purposes as scoured wool; that in some cases Colonial scoured wool would have to be rescoured, *but that where the shrinkage would not be over 5 or 10 per centum Colonial scoured wool could be used without rescouring;* that if the shrinkage was 15 or 20 per centum the wool would have to be rescoured, but that there were Colonial scoured wools imported which could be used without rescouring; that he estimated the shrinkage on Exhibit 1 at about 12 per centum; that that estimate was probably within 2 per centum although of course he could not guess exactly; that sometimes in this country the percentage of shrinkage of domestic scoured wool *ran higher than 3 per centum if poorly scoured,* but that it was still scoured wool; that the only difference between Colonial scoured wool and domestic scoured wool was the percentage of scouring

The importer contends, first, that the importation was not known to the trade as scoured wool, but as Colonial scoured wool; second, that it differs from wool commercially known as scoured wool and would not constitute a good delivery under an order for scoured wool; third, that duty should have been imposed on the number of pounds of clean content and not on the grease in the wool in excess of 3 per centum.

Paragraph 1102 imposes a duty on wools in the grease, on washed wools, on wools imported in the scoured state, and on wools imported on the skin. No other wools are provided for in the wool schedule save those advanced beyond the scoured state.

Paragraph 1101 defines wool in the grease as wool which has been shorn from the sheep without any cleansing; that is to say, wool in its natural condition. The same paragraph defines washed wool as wool which has been washed with water only, on the sheep's back or on the skin.

The importation is not wool on the skin. It has not been washed on the sheep's back or on the skin and is therefore not washed wool. It has been cleansed to some extent and is therefore not in its natural condition. It is manifestly wool which has not been advanced beyond the scoured state. Clearly, therefore, if the importation be not scoured wool, then it is a class of wool not provided for in the wool schedule.

We do not think that Congress intended to exclude from the wool schedule wools which had been scoured, but not scoured enough. If Congress had intended to limit the provision for wools in the scoured state to wools from which all but 3 per centum of grease and foreign matter had been removed, it could have said so. If it was the legislative intent to give a special meaning to the designation "wool in a scoured state," Congress could have defined that phrase, just as it defined "wool in the grease," and washed wool. No such definition was given and unless there be proof that the words scoured wool have a special meaning in the trade, scoured wool is wool which has been subjected to the scouring process applied to wools even if it retains a substantial percentage of grease and foreign matter after being so processed.

The National Wool Growers' Association, through its representative, before the Committee on Ways and Means, as appears from appellant's own brief, urged that the duty should be imposed on the clean content of wool, that is to say, on the scoured content.

Congress specified that the duty on wool in the grease, washed wool, and wool imported on the skin should be imposed on the number of pounds of *clean content.* On the other hand, wool in a scoured state was subjected to a duty of 31 cents per pound and that meant the number of pounds of scoured wool actually imported. not the number of pounds of clean content. The laying of a duty of 31 cents per pound on wool in the scoured state and not on the number of pounds of clean content was done by Congress with its eyes wide open as to the facts and was not the result of mistake or inadvertence. Even if the words "clean content" were improvidently omitted from the scoured wool provision, we have no right to remedy the defect and amend a provision which is so clear and unambiguous that it is not open to interpretation.

The testimony introduced by the importer for the purpose of proving that the expression "wool in the scoured state" had a meaning different from that accorded to it by people in general, fell

far short of establishing commercial designation. None of the importer's witnesses testified that the importation had not been scoured and all of them were content to say that it had not been scoured enough to constitute a good delivery of scoured wool. As to the percentage of grease which would preclude a good delivery, if left in the wool, the witnesses were not in accord. All of them stated that the presence of more than 3 per centum of grease in wool would bar its acceptance. Nevertheless, all of them testified that the importation was bought and sold as Colonial scoured wool. At least one witness for the importer admitted that Colonial scoured wools containing as high as 10 per centum of grease were imported and used as scoured wools without rescouring. But, however that may be, the duty prescribed by paragraph 1102 for scoured wools is not imposed on the clean content and, therefore, if wools have been subjected to the wool scouring process, they are scoured wools and must pay duty at 31 cents per pound without allowance for impurities natural to the commodity.

The judgment of the Board of General Appraisers is *affirmed*.