JAS. AKEROYD & CO. ET AL. *v.* UNITED STATES (No. 2998)[1]

United States Court of Customs Appeals, March 13, 1928

Comstock & Washburn (*J. Stuart Tompkins* of counsel) for appellants.

*Charles D. Lawrence,* Assistant Attorney General (*Fred J. Carter,* special attorney, of counsel), for the United States.

[1] T. D. 42641.

[Oral argument February 8, 1928, by Mr. Tompkins and Mr. Carter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The proper classification of various imports of so-called Colonial scoured wool is involved in this appeal. They were classified by the collector in each case, under paragraph 1102 of the Tariff Act of 1922, at 31 cents per pound as scoured wool. The importers protested, claiming dutiability of the wools under the same paragraph at 31 cents per pound on the clean content, with an alternative claim under paragraph 1459 as unenumerated unmanufactured articles. The protests having been consolidated, the United States Customs Court overruled the same, and the importers appeal.

The issues here are admittedly identical with those in *Chicago Wool Co. of Pennsylvania v. United States*, 13 Ct. Cust. Appls. 641, T. D. 41485. In that case, as in this, New Zealand wools, known as Colonial scoured wools, containing a much larger proportion of grease than domestic scoured wools, were claimed to be dutiable only on their clean content, the theory being that such wools were not, in fact, wools in a scoured state. In passing upon the matter submitted this court said, *inter alia*:

Paragraph 1102 imposes a duty on wools in the grease, on washed wools, on wools imported in the scoured state, and on wools imported on the skin. No other wools are provided for in the wool schedule save those advanced beyond the scoured state.

Paragraph 1101 defines wool in the grease as wool which has been shorn from the sheep without any cleansing; that is to say, wool in its natural condition. The same paragraph defines washed wool as wool which has been washed with water only, on the sheep's back or on the skin.

The importation is not wool on the skin. It has not been washed on the sheep's back or on the skin and is therefore not washed wool. It has been cleansed to some extent and is therefore not in its natural condition. It is manifestly wool which has not been advanced beyond the scoured state. Clearly, therefore, if the importation be not scoured wool, then it is a class of wool not provided for in the wool schedule.

We do not think that Congress intended to exclude from the wool schedule wools which had been scoured, but not scoured enough. If Congress had intended to limit the provision for wools in the scoured state to wools from which all but 3 per centum of grease and foreign matter had been removed, it could have said so. If it was the legislative intent to give a special meaning to the designation "wool in a scoured state," Congress could have defined that phrase, just as it defined "wool in the grease," and washed wool. No such definition was given, and unless there be proof that the words scoured wool have a special meaning in the trade, scoured wool is wool which has been subjected to the scouring process applied to wools even if it retains a substantial percentage of grease and foreign matter after being so processed.

The National Wool Growers' Association, through its representative, before the Committee on Ways and Means, as appears from appellant's own brief, urged that the duty should be imposed on the clean content of wool; that is to say, on the scoured content.

Congress specified that the duty on wool in the grease, washed wool, and wool imported on the skin should be imposed on the number of pounds of *clean content*. On the other hand, wool in a scoured state was subjected to a duty of 31 cents per pound and that meant the number of pounds of scoured wool actually imported, not the number of pounds of clean content. The laying of a duty of 31 cents per pound on wool in the scoured state and not on the number of pounds of clean content was done by Congress with its eyes wide open as to the facts and was not the result of mistake or inadvertence. Even if the words "clean content" were improvidently omitted from the scoured wool provision, we have no right to remedy the defect and amend a provision which is so clear and unambiguous that it is not open to interpretation. * * * But, however that may be, the duty prescribed by paragraph 1102 for scoured wools is not imposed on the clean content and, therefore, if wools have been subjected to the wool scouring process, they are scoured wools and must pay duty at 31 cents per pound without allowance for impurities natural to the commodity.

It will, therefore, be noted that all the issues now before us were fully decided in the Chicago Wool Co. case, supra, unless the record in the case at bar contains other evidence which makes another conclusion necessary. The additional matter consists of the testimony of five witnesses called by the importers. These witnesses all state that the wool imported here has been scoured, but state further that they do not consider it to be wool "imported in the scoured state." A typical example of such testimony is that of William G. Davidson:

Q. With reference to such wools, when imported, would you say that those are wools imported in the scoured state?—A. No.

Q. Why?—A. Because they contain grease.

Q. What do you understand by wools in the scoured state?—A. Wools that are scoured practically free of grease.

Q. And by practically free of grease you would say how much, will you say how much grease might be present and the wools still be regarded as wools in the scoured state, or scoured wools?—A. Nothing over 3 or 2 per cent.

Q. What would you say would be the average of wools in the scoured state of the grease content?—A. I should say 1 or 2 per cent.

Such testimony, of course, amounts to no more than an expression of the individual opinion of the person giving it and does not, to any degree, amount to proof of commercial designation. If, under our holding in the *Chicago Wool Co.* case, *supra*, proof of commercial designation may be permitted in respect to the meaning of the language of said paragraph 1102, which question is not here involved, such proof must be, under the authorities, that at and before the time of the enactment of the Tariff Act of 1922 the term "wool in the scoured state" had a definite, uniform, and general meaning in the trade and commerce of the country, other than its ordinary meaning; this proof may then be followed by proof showing what such meaning was, and that the wool in question was not included therein. *United States* v. *Kwong Yuen Shing*, 1 Ct. Cust. Appls. 14, T. D. 30773; *United States* v. *Wells Fargo & Co.*, 1 Ct. Cust. Appls. 158, T. D. 31211; *United States* v. *Solomon*, 1 Ct. Cust.

Appls. 246, T. D. 31277; *Maine Central R. R. Co.* v. *United States*, 14 Ct. Cust. Appls. 411, T. D. 42054.

Commercial designation is a thing often claimed in customs litigation and rarely established. The rule of commercial designation was never intended, as has been often said, to apply to cases where some portion of the trade use a certain trade practice or nomenclature, but was intended to apply to cases where the trade designation is so universal and well understood that the Congress, and all the trade, are supposed to have been fully acquainted with the practice at the time the law was enacted. There was never any other reason for the rule.

This court has already construed paragraph 1102 in the *Chicago Wool Co.* case, *supra*, and has stated what, in its judgment, the common meaning of the term "wool in the scoured state" is; that matter, therefore, thus becomes *stare decisis*, and proof of the common meaning of the term, as in the case at bar, can not effect a change in that construction.

The Customs Court came to a correct conclusion and its judgment is, therefore, *affirmed*.