W. R. Grace & Co. *v.* United States (No. 3452)[1]

United States Court of Customs and Patent Appeals, January 25, 1932

*Puckhafer, Rode & Tompkins* (*George J. Puckhafer* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell* and *Philip Stein*, special attorneys, of counsel), for the United States.

[1] T. D. 45482.

[Oral argument December 9, 1931, by Mr. Puckhafer and Mr. Stein]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

Appellants, in 1928, imported at the port of New York certain desiccated coconut meat. It was assessed for duty at 3½ cents per pound under paragraph 756 of the Tariff Act of 1922 as "coconut meat, shredded and desiccated." Appellants protested, claiming the merchandise to be free of duty under paragraph 1626 of said tariff act as copra, or dutiable at 20 per centum ad valorem under paragraph 1459 as a nonenumerated manufactured article, or at 35 per centum ad valorem under paragraph 759 as "edible nuts, pickled or otherwise prepared or preserved, and not specially provided for," or at 35 per centum ad valorem under paragraph 749. In the lower court appellants relied only upon the claim under said paragraph 759, and rely upon said claim here. The merchandise in issue is conceded to be desiccated.

The competitive paragraphs are as follows:

PAR. 756. * * * coconut meat, shredded and desiccated, or similarly prepared, 3½ cents per pound.

PAR. 759. Edible nuts, shelled or unshelled, not specially provided for, 1 cent per pound; pickled, or otherwise prepared or preserved, and not specially provided for, 35 per centum ad valorem; nut and kernel paste, not specially provided for, 15 cents per pound: *Provided*, That no allowance shall be made for dirt or other impurities in nuts of any kind, shelled or unshelled.

The lower court overruled the protests, and from its judgment entered accordingly appellants have appealed.

It appears from the record that there were six different kinds or grades of coconut meat involved, represented by six exhibits introduced in evidence, numbered from 1 to 6, inclusive. The assignments of error limit our consideration to the correctness of the lower court's judgment as to the coconut meat represented by Exhibits 4 and 6, which exhibits are before us.

Exhibit 4 is described in the testimony as "chipped or sliced coconut" and Exhibit 6 as "fine macaroon coconut."

It appears from the testimony that all of the coconut meat represented by Exhibits 1 to 6, inclusive, is treated alike in the beginning. The coconuts are first steamed and then they are opened with a knife, like an oyster knife, taking off the shell of the nut, after which the skin is removed. Then, the testimony of appellants' witness Weeks shows—

For shredding, they go into a machine that represents a hopper, which travels back and forth, and inside of that hopper there is a half cylinder which is grooved, and in that cylinder, through these grooves, revolve very rapidly *knives*. (Italics ours.)

The witness then identified photographs of the machine used in said process and further testified as follows:

Q. Now, you testified that this machine on page 3 is the kind of machine that was used in the production of Exhibits 1, 2, and 3?—A. Yes, sir.

Q. Did· you state how that machine operates?—A. I did.

Q. And how do these various *cuts* come from the machine? They apparently appear to be different kinds.—A. After the coconut is *cut* it then goes to a drier—there are different forms of driers—and after it is dried it goes through a sieve—that is the regular name—the coconut goes over the first sieve. This would be this coarse shred. (Italics ours.)

Judge WAITE. Exhibit 1?

The WITNESS. Yes.

A. (Continuing). Then going over the next sieve you would get Exhibit 3, which is called the improved shred. Then going over the next sieve you would get Exhibit 2, which is medium.

Judge WAITE. You get the coarse out first, and get the finest and the next coarse?

The WITNESS. The coarsest remains in the sieve; the next coarsest remains in the next sieve.

Judge WAITE. The same as any family sifter?

The WITNESS. Yes. And then there is a very fine coconut left. That fine coconut is taken to another machine entirely and is ground into what is called macaroon coconut.

The witness then testified that the merchandise represented by Exhibit 4 was prepared as follows:

Q. Will you please state how that operation is performed?—A. The coconut, after it is prepared, as I described before, goes into a round hopper, which is about the size of the larger-sized peeled coconut, and horizontal disks about six inches in diameter run around very rapidly at the bottom of this hopper. The hopper is about six inches deep. On these disks there are three or four blades which can be set to cut either thicker or thinner. The coconut is put into this hopper, a lever is brought down, shoving the coconut onto these wheels, and the coconut comes out of the hopper and from there it goes to the drier, and from there it goes to the sieve, where any of the small pieces are sifted off, and these very small pieces are also ground up to make macaroon coconut.

Appellants contend that Congress, in the Tariff Act of 1922, substantially changed the classification of coconut meat from that provided in the Tariff Act of 1913, and invoke the rule that a change in statutory language imports a change in meaning unless the contrary plainly appears.

The predecessor of paragraph 756 of the Tariff Act of 1922 was paragraph 221 of the Tariff Act of 1913, the pertinent part of which reads as follows:

* * * coconut meat or copra, desiccated, shredded, cut, or similarly prepared, * * *.

It is appellants' contention that, by omitting the word "cut" from said paragraph 756 of the Tariff Act of 1922 and inserting in paragraph 759 of said act, relating to edible nuts, the words "or otherwise prepared or preserved," not found in the latter's predeces-

sor paragraph in the Tariff Act of 1913, Congress indicated that coconut meat, *cut* and desiccated, should be excluded from paragraph 756 and included in paragraph 759, and that only coconut meat which is shredded, as distinguished from cut but not shredded, is now classifiable under said paragraph 756.

For the purposes of this case we may assume appellants' construction of paragraph 756 is correct, and consider whether the merchandise in issue is, in fact, "shredded and desiccated, or similarly prepared," according to the common meaning of those terms.

Funk & Wagnalls' Standard Dictionary defines the word "shred" as follows:

To tear, *cut*, or separate into small irregular or jagged strips or pieces; reduce to long and narrow fragments, as fibrous material. (Italics ours.)

The Century Dictionary and Cyclopedia defines the word "shred" as—

To *cut* or tear into small pieces; also, to *cut* or tear pieces from. (Italics ours.)

Applying this definition to the merchandise here in question, we find, from an examination of Exhibit 4, that it consists of small irregularly shaped chips or slices of desiccated coconut meat, varying from one-fourth of an inch to two inches in length. The testimony shows that it was cut, by the machine hereinbefore referred to, into these shapes, and it clearly responds to the dictionary definitions of the word "shred" given above.

With respect to the merchandise represented by Exhibit 6, it is shown by the testimony that it is derived from the product of the machine producing coconut meat of the character of Exhibits 1, 2, and 3, which is admitted by appellants to be shredded coconut meat, and also from the product of the machine producing the sliced or chipped coconut meat represented by Exhibit 4. That produced from the former machine is the residue which has passed through three screens, while that produced from the latter is the residue which has passed through one screen, in which the chipped or sliced coconut has been placed. This part of the product of both machines is then ground and the resulting product is Exhibit 6, known as macaroon coconut.

The additional process of grinding does not take the product out of the purview of paragraph 756. The grinding process, following the shredding process, might remove the resulting product from being defined as shredded, but it would clearly come within the provision of said paragraph, "or similarly prepared."

We may observe, in passing, that the testimony indicates that the coconut meat represented by Exhibits 1, 2 and 3, which appellants concede is shredded, is cut, and that none of it is torn, as distinguished from cut. It does not necessarily follow, however, that all

prepared coconut meat is shredded. If it were cut in large, regular pieces, it probably would not be so termed. Whether Congress, by omitting the word "cut" from paragraph 756, intended to eliminate from its provisions cut coconut that is not shredded, it is unnecessary here to determine. Furthermore, it will be noted that the word "copra" is found in paragraph 221 of the Tariff Act of 1913, but is omitted from paragraph 756. It may be that the omission of the word "cut" was because of the omission of the word "copra." or it may be that Congress considered the word "cut" as mere surplusage and, as said in the case of *United States* v. *Max Littwitz*, 18 C. C. P. A. (Customs) 341, T. D. 44588, where the words "lace articles" had been omitted from the statute which contained the word "laces"—

\* \* \* We are unable to discern how anything can be inferred from this except the fact that the Congress, in the revision of 1922, was endeavoring to simplify this provision. \* \* \*

However this may be, we are clear that Congress did not intend to exclude from the provisions of said paragraph 756 any desiccated coconut of the character represented by said Exhibits 4 and 6, and the rule that a change in language of a statute ordinarily must be taken as indicating a change in legislative intent is not applicable here.

Appellants contend that the merchandise represented by Exhibit 6 is a manufacture of waste, regarding the merchandise, before being ground, as a waste resulting from the preparation of desiccated coconut meat in the processes hereinbefore described.

We can not so hold. It does not come within any judicial definition of waste with which we are familiar, and appellants have cited no authority in support of their contention that the merchandise represented by Exhibit 6 is a manufacture of waste except the case of *Latimer* v. *United States*, 223 U. S. 501. This case, however, is clearly an authority against such contention made by appellants.

Finally, upon this branch of the case, we can see no possible reason why Congress should distinguish, for duty purposes, between desiccated coconut meat represented by Exhibits 1, 2, 3, and 5, on the one hand, and Exhibits 4 and 6 on the other, and we hold that it has not done so.

The lower court found that commercial designation of shredded coconut, excluding the merchandise in issue from being so classified, had not been established, even if such evidence were relevant. We are clear that no error was committed in this holding. The testimony does not establish that the word "shredded," as used in said paragraph 756, had a definite, uniform, and general meaning in the trade and commerce of the country other than its common meaning. *Jas. Akeroyd & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 440, T. D. 42641.

For the reasons stated, the judgment appealed from is *affirmed*.