EDWARD BRENNER *v.* UNITED STATES (No. 3887) [1]

United States Court of Customs and Patent Appeals, November 4, 1935

*Walden & Webster (J. L. Klingaman* of counsel) for appellant.
*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *William Whynman,* special attorney, of counsel), for the United States.

[Oral argument October 8, 1935, by Mr. Klingaman and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

The merchandise involved in this appeal consists of lily buds imported at the port of New York in 1932. It was classified by the Collector of Customs under the provision in paragraph 753 of the

[1] T. D. 48030.

Tariff Act of 1930 for "cut flowers, fresh, dried, prepared, or preserved," and duty was assessed thereon at the rate of 40 per centum ad valorem.

Appellant protested the liquidation by the collector, claiming the merchandise to be free of duty under paragraph 1722 of said act, or alternatively dutiable at 10 per centum ad valorem under paragraph 1558 as a nonenumerated, unmanufactured article.

The paragraphs of said tariff act here involved read as follows:

PAR. 753.. Tulip bulbs, $6 per thousand; hyacinth bulbs, $4 per thousand; lily. bulbs, $6 per thousand; narcissus. bulbs, $6 per thousand; crocus corms, $2 per thousand; lily of the valley pips, $6 per thousand; all other bulbs, roots, root-stocks, clumps, corms, tubers, and herbaceous perennials, imported for horticultural purposes, 30 per centum ad valorem; cut flowers, fresh, dried, prepared, or preserved, 40 per centum ad valorem.

PAR. 1722. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated.or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The United States Customs Court (Third Division) overruled appellant's protest and entered judgment accordingly. From such judgment he took the appeal before us.

Appellant admits that the merchandise here involved is identical in character with the merchandise involved in our decision in the case of *Brenner* v. *United States*, 20 C. C. P. A. (Customs) 373, T. D. 46134, wherein we held that the lily buds there involved were cut flowers within the common meaning of that term, affirming the judgment of the Customs Court. However, in that case there was no contention that the term "cut flowers", as used in paragraph 751 of the Tariff Act of 1922, there involved, had a meaning different from its common meaning, and that, under the commercial meaning of the term, buds like those here involved were excluded.

In the case at bar this issue is raised, and it is the only issue in the case, appellant conceding that, if the common meaning of the term "cut flowers" should prevail, our decision herein is controlled by our decision in the case of *Brenner* v. *United States, supra.*

The evidence produced by appellant in support of his claim of commercial designation consists of the testimony of five witnesses, of whom four were retail florists engaged in business in the city of New York. Another witness, one Abraham Black, was engaged in the wholesale florist business. The Government produced one witness, who was a grower of cut flowers; in our view the testimony of this witness neither supports nor rebuts appellant's claim of commercial designation.

192

Appellant's witness Covel testified that, in addition to being a retail florist, he was a grower of bulbs in Hamilton, Bermuda. He also testified that he sold lily buds like those here involved at wholesale in the United States.

The testimony especially relied upon by appellant to establish the claimed commercial designation is set out in the brief of his counsel as follows:

*Witness Covel* (R. 8).

Q. What has been the name by which merchandise like Exhibit 1, in this case has been sold in the United States at wholesale in your experience?—A. Lily buds.

*       *       *       *       *       *       *

Q. You deal in cut flowers generally in your shop, in New York?—A. Yes, sir.

Q. Did you bring with you samples illustrating what you handle as cut flowers, and what you claim to be cut flowers?—A. Yes, sir.

Q. Will you produce that please? (Witness produces samples.)

Q. This is a collection of flowers, including what varieties?—A. Fair collection, roses, carnation, peonies, irises and mignonettes, that is about all.

Mr. WHYNMAN. Got any lilies on there?

The WITNESS. Lilies.

Mr. KLINGAMAN. I offer that as an illustrative exhibit.

Mr. WHYNMAN. No objection.

Judge EVANS. Let them be marked.

(Samples referred to marked in evidence Collective Illustrative Exhibit A, Protest 616279G, of this date.)

*Witness Dodson* (R. 16–17).

Q. Mr. Dodson, what is your business?—A. Florist.

Q. How long have you personally been in that business?—A. Between twenty and twenty-five years.

Q. Where?—A. New York and Brooklyn.

*       *       *       *       *       *       *

Q. Have you in your experience purchased merchandise like Exhibit 1, and Illustrative Exhibit A?—A. Yes, sir.

Q. From what sort of business men do you buy such merchandise, that is dealers, growers or what?—A. Mostly from the wholesale market in New York, occasionally from the growers, not very often.

Q. Now take the heads or buds, Exhibit 1. What in your experience has been the name that the trade has applied to them, when you make purchases and sales?—A. Call them lily buds, buds, or lily heads.

Q. That has always been true throughout your experience?—A. Yes, sir.

Q. When you order merchandise like 2-A, and 3-A, what do merchants call them?—A. That is cut flowers, cut lilies.

(At request of Government counsel Illustrative Exhibit A had been divided heretofore into parts, Illustrative Ex. 2-A and 3-A, constituting the lilies in said exhibit [R. 13]).

Q. The individual ones would be cut lilies, that is all there is on those two exhibits?—A. Yes, sir.

Q. Taking the aggregation Exhibit A, that would be what?—A. They are cut flowers.

Q. On an order for cut lilies, does the trade deliver merchandise like Exhibit 1, the heads?—A. What was the question?

Q. On an order for cut lilies, does the trade deliver merchandise like Exhibit 1, the heads?—A. No, sir.

Q. Would you accept delivery of them on an order for cut lilies?—A. No, sir.

Q. Have you dealt in lily plants?—A. Yes, sir.

Q. How in the wholesale trade do you designate them in order to distinguish them from other merchandise?—A. Just as plants.

Q. Lily plants?—A. Tall lilies and plants.

Q. And have those distinctions you now testified to always existed in your trade?—A. As far as I know.

Q. And has that been true with reference to all the different dealers from whom you have made purchases?—A. All I have ever purchased from.

Q. In other words, it is general throughout the trade, as far as your experience goes?—A. Yes, sir.

*　　*　　*　　*　　*　　*　　*

*Witness Black* (R. 20–22).

Q. Mr. Black, what is your business?—A. Wholesale florist business.

Q. What is your firm name?—A. A. Black & Company.

Q. Where are you located?—A. 57 West 27th Street.

Q. What is the source of supply of your products, that is dealers or growers, or what?—A. Most of our flowers come from the grower, direct.

Q. And they are located in what section?—A. Throughout the country. We handle some flowers from Bermuda. We handle some Bermuda lily heads, that is about the only flowers outside the country.

Q. You say throughout the country, do you mean you get flowers from various sections of the United States?—A. That is true.

Q. How long have you personally been in this line of business?—A. About seven years—Pardon me, I didn't understand that question; in business for myself or wholesale?

Q. Start yourself, for what length of time, have you been in the flower business?—A. About seven years.

*　　*　　*　　*　　*　　*　　*

Q. You buy from growers and you sell to what class of trade?—A. We sell to the retailer.

Q. Retail florist?—A. That is right.

Q. In your experience, what has been the name that the merchants in the florist business, have called merchandise like Exhibit 1, those two articles before you?—A. These are Bermuda lily heads, classify them as lily heads.

Q. Are they ever called lily buds?—A. Lily buds, some call them buds.

Q. And some heads. Has that always been true in your experience, that they called them lily buds or lily heads?—A. Yes.

Q. Has that been true of all the various buyers and sellers with whom you did business in this article?—A. They usually refer to them and say, Give me 100 lily buds, or a box of lily heads.

*　　*　　*　　*　　*　　*　　*

Q. Has that practice been general throughout the trade with which you come in contact?—A. Yes, sir.

Q. Now take Illustrative Exhibit 2-A, and 3-A, what has the trade called them?—A. Those are cut lilies.

Q. And taking this whole Illustrative Exhibit A, that I show you, what does the trade call that?—A. Group of cut flowers.

Q. Do you deal in lily plants?—A. No, we do not deal in lily plants, no potted flowers.

194

Q. On an order for cut lilies, would you ship articles like Exhibit 1?—A. No.

Q. If you placed an order for cut lilies would you accept a delivery of Exhibit 1?—A. No, I would expect cut lilies, long stemmed lilies.

Q. You would expect to get Illustrative Exhibit 2–A, and 3–A?—A. That is true.

\*　\*　\*　\*　\*　\*　\*

Following the above quotation in the brief we find the following:

Witnesses Klein and Skorvan confirmed this custom of the trade (R. 23–26). No effort was made to contradict appellant's evidence. Therefore, the only question before the court is whether under the well-known rule applicable to this class of cases it has been established that there is a definite, uniform and general trade usage of the statutory term which excludes the imported merchandise. \* . \* \*

We are constrained to hold that the testimony quoted and the other testimony in the record fails to establish a *prima facie* case that there is a definite, uniform, and general trade usage in the United States of the term "cut flowers" which excludes the merchandise here involved.

In the case of *United States* v. *Sheepshearers Mdse. & Comm. Co.*, 20 C. C. P. A. (Customs) 327, T. D. 46112, we said:

It is elemental that to establish a commercial designation different from common meaning such designation must be shown to be *uniform, definite,* and *general* in the trade and commerce in the article *throughout the United States*. (Last italics supplied.)

In the case of *Walter Johnson* v. *United States*, 21 C. C. P. A. (Customs) 129, T. D. 46464, we said:

\* \* \* The testimony that was offered as to the trade or commercial designation of the imported goods did not comply with the rule which has been stated by us on numerous occasions, that the trade or commercial designation must be established by a preponderance of the evidence, and *must be definite, uniform, and general, and not local, partial, or personal. United States* v. *Brandenstein & Co.*, 17 C. C. P. A. (Customs) 480, T. D. 43941; *Sunde & D'Evers Co.* v. *United States*, 17 C. C. P. A. (Customs) 24, T. D. 43321. The witnesses testified, in so far as it affected a possible commercial designation, only as to trade meaning in certain States along the Pacific coast. This is not sufficient to establish a commercial designation of a term which shall be applied in the administration of a statutory provision which must be Nation-wide in its application. (Italics supplied.)

In the case at bar the burden was upon appellant to establish *prima facie* that in the trade and commerce in cut flowers throughout the United States the term "cut flowers" had a meaning different from its ordinary meaning, and that such trade meaning excluded the merchandise here involved.

We are of the opinion that the testimony in the record before us falls far short of establishing that the term "cut flowers" had a definite, uniform, and general meaning in the trade and commerce in cut flowers throughout the United States different from its common meaning, and that such commercial meaning excluded from such term the merchandise here involved. Only one of appellant's witnesses was

engaged in the wholesale business; all of appellant's other witnesses were retail florists engaged in business in the city of New York, and we find nothing in their testimony to indicate that any of them had any knowledge of the trade and commerce in cut flowers outside of that city, nor do any of them testify with respect to that subject.

The witness Black was engaged in the wholesale florist business in the city of New York. He testified that he bought flowers from growers from various sections throughout the country and sold them to retail florists. He did not testify that he was familiar with the trade understanding of the term "cut flowers" in markets other than in the city of New York. It may be that growers selling flowers to the witness or his company sold them upon the New York market, and according to the trade understanding of the term "cut flowers" in that market. Moreover, there is no testimony of this or any other witness that, according to the general trade understanding of said term, throughout the United States, the merchandise here involved would be excluded from the term "cut flowers."

It will be observed from the testimony of the witness Black that he testified that *he* would exclude merchandise like that here involved from the term "cut flowers," and he did not testify that the trade generally would do so.

The mere fact that the trade might call the involved merchandise lily buds or lily heads would not exclude it from the term "cut flowers," but in order to establish commercial designation it would be necessary to establish that the trade definitely, uniformly, and generally, throughout the United States, understood the term "cut flowers" to have a meaning different from its common meaning, and that the meaning so understood by the trade excluded merchandise like that here involved from the term "cut flowers." It is clear that the evidence before us fails in this respect.

In the case of *Jas. Akeroyd & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 440, T. D. 42641, this court, speaking through Presiding Judge Graham, said:

Commercial designation is a thing often claimed in customs litigation and rarely established. The rule of commercial designation was never intended, as has been often said, to apply to cases where some portion of the trade use a certain trade practice or nomenclature, but was intended to apply to cases where the trade designation is so universal and well understood that the Congress, and all the trade, are supposed to have been fully acquainted with the practice at the time the law was enacted. There was never any other reason for the rule.

In the foregoing we have assumed that the term "cut flowers" in said paragraph 753 is subject to the application of the rule of commercial designation. In view of what we have said respecting the lack of proof of commercial designation, we do not find it necessary to decide the question of whether or not, if commercial designation had been

established, it should govern the classification of the merchandise here involved.

Inasmuch as we find that the evidence in the case does not establish that the commercial meaning of the term "cut flowers," as used in said paragraph 753, is different from its common meaning, and that under its commercial meaning merchandise like that here involved is excluded from the term "cut flowers," our decision herein is controlled by our decision in the case of *Brenner* v. *United States, supra,* and the judgment of the United States Customs Court is *affirmed.*