(C. D. 746)

E. H. BAILEY & CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 10, 1943)

*Tompkins & Tompkins (Allerton deC. Tompkins of counsel)* for the plaintiff. *Paul P. Rao,* Assistant Attorney General (*Francis X. O'Donnell, Jr.,* special attorney), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

COLE, Judge: Certain Peruvian wool imported at the port of Philadelphia was assessed with duty as scoured wool, at 37 cents per pound of clean content under the Tariff Act of 1930, 19 U. S. C., 1940 ed., sec. 1001, par. 1102 (b), and is claimed to be properly dutiable at only 34 cents per pound of clean content under the same paragraph as washed wool. Said paragraph, so far as pertinent, reads as follows:

PAR. 1102. * * *.
(b) Wools, not specially provided for, and hair of the Angora goat, Cashmere goat, alpaca, and other like animals, in the grease or washed, 34 cents per pound of clean content; scoured, 37 cents per pound of clean content; * * *.

The issue herein arises by reason of the following definitions that are set forth in paragraph 1101 (b) of the wool schedule in the Tariff Act of 1930; changed to paragraph 1101 (c) by the Customs Administrative Act of 1938, 19 U. S. C., sec. 1001 (1940 ed.):

PAR. 1101. * * *.
(b) For the purposes of this schedule:

(1) Wools and hair in the grease shall be considered such as are in their natural condition as shorn from the animal, and not cleansed otherwise than by shaking, willowing, or burr-picking;

(2) washed wools and hair shall be considered such as have been washed, with water only, on the animal's back or on the skin, and all wool and hair, not scoured, with a higher clean yield than 77 per centum shall be considered as washed;

(3) scoured wools and hair shall be considered such as have been otherwise cleansed (not including shaking, willowing, burr-picking, or carbonizing);

* * * * * * *

It is conceded by the parties that the wool in question was dipped in water after shearing, which removed the loose dirt; and that it contains 75 per centum of clean content.

Plaintiff introduced the testimony of two commercial witnesses with a view of establishing that the merchandise in question was recognized in the trade as washed wool. Whatever their personal trade understanding of this wool may be, it can have no bearing on the question herein in the light of the statutory definition for washed wool in paragraph 1101 (b–2), *supra*, which clearly indicates a legislative intent to apply a special meaning to such wool for tariff purposes. It is for that reason, and properly so, that the judge who heard this case on circuit excluded all evidence on the question of commercial designation. There is support for this view in *Cadwalader* v. *Zeh*, 151 U. S. 171, wherein the Supreme Court said:

* * *. It has long been a settled rule of interpretation of the statutes imposing duties on imports, that if words used therein to designate particular kinds or classes of goods have a well known signification in our trade and commerce, different from their ordinary meaning among the people, the commercial meaning is to prevail, unless Congress has clearly manifested a contrary intention; * * *.

In *United States* v. *Stone & Downer Co.*, 274 U. S. 225, the Supreme Court discussed somewhat at length the force and effect of statutory language expressing an intention to give special construction to a particular term. The case involved judicial interpretation of the provision for "wool, commonly known as clothing wool," that appeared in paragraphs 18 and 19 of the Emergency Tariff Act of 1921. The Court of Customs and Patent Appeals had held to the

effect that proof of commercial meaning of the term "clothing wool" was controlling and in reversing this rule the Supreme Court said:

The natural and usual meaning of the words "clothing wool" is wool for clothing. That is what the nonexpert reader of the words would understand until he was advised of a different meaning by reason of the language of the trade. When, therefore, the words are used "commonly known as clothing wools", the ordinary inference from the collocation of the words is that they refer to wool that is used in making clothing. If Congress had intended that the words "clothing wool" should have their commercial designation, it would simply have used the words without qualification or it would have said "commercially known as." It would not have used the phrase "commonly known as."

\* \* \* \* \* \* \*

What we hold here is that Congress, by using the expression "commonly known as clothing wool," indicated expressly its intention not to give to the expression "clothing wool" the commercial designation that it has when used in contrast with combing wool, and that the history of the legislation shows that the trade or commercial meaning is contrary to the purpose of Congress in the enactment of the law. In other words, the authorities upon which the Court of Customs Appeals proceeded we think have no application to the interpretation of this act, save as they recognized that in the last analysis effect must be given to the intention of Congress.

The case of *Chicago Wool Co. of Pennsylvania* v. *United States*, 13 Ct. Cust. Appls. 641, T. D. 41485, which arose under the Tariff Act of 1922, has considerable bearing on the present issue. There the merchandise consisted of certain so-called "Colonial scoured wool." Duty was levied thereon at 31 cents per pound as wool in the scoured state. It was claimed to be wool imported in the grease or washed, and therefore subject to duty only on the basis of its clean content. Testimony was offered to show that the merchandise was known in the trade as "Colonial scoured wool" and that it differed, commercially, from scoured wool. The court overruled the claim of the importer, and in reaching its conclusion adhered to statutory definitions, saying:

Paragraph 1101 defines wool in the grease as wool which has been shorn from the sheep without any cleansing; that is to say, wool in its natural condition. The same paragraph defines washed wool as wool which has been washed with water only, on the sheep's back or on the skin.

The importation is not wool on the skin. It has not been washed on the sheep's back or on the skin and is therefore not washed wool. It has been cleansed to some extent and is therefore not in its natural condition. It is manifestly wool which has not been advanced beyond the scoured state. Clearly, therefore, if the importation be not scoured wool, then it is a class of wool not provided for in the wool schedule.

We do not think that Congress intended to exclude from the wool schedule wools which had been scoured, but not scoured enough. If Congress had intended to limit the provision for wools in the scoured state to wools from which all but 3 per centum of grease and foreign matter had been removed, it could have said so. If it was the legislative intent to give a special meaning to the designation "wool in a scoured state," Congress could have defined that phrase, just as it defined "wool in the grease," and washed wool. No such definition was given and unless there be proof that the words scoured wool have a special meaning in

the trade, scoured wool is wool which has been subjected to the scouring process applied to wools even if it retains a substantial percentage of grease and foreign matter after being so processed.

The same issue was re-litigated in the case of *Jas. Akeroyd & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 440, T. D. 42641, and the appellate court reached the same conclusion.

In the *Chicago Wool Co.* case, and the *Akeroyd* case, *supra*, the court interpreted the statutory definitions in the wool schedule of the Tariff Act of 1922, and unless the effect of those decisions is to be entirely eliminated, there seems to be no support for the claim of plaintiff here. Except for the limitation on clean content included in paragraph 1101, *supra*, the definition of washed wool in the present tariff act is the same as that in the previous act. It seems to follow therefore, that under all of the cited authorities the statutory definition, requiring strict construction, must prevail to give proper effect to manifest Congressional intent.

There is no merit in plaintiff's contention that the definition of washed wool in paragraph 1101, *supra*, is without limitation as to clean content, and that the mention of 77 per centum indicates a purpose of extending the provision to include such wool of greater clean content. To adopt this suggestion would enlarge the scope of the provision to such an extent as would defeat a very clear legislative intent expressed in the unmistakable language of the statutory definition, which places such wool in two categories, to wit: (1) wool, regardless of clean content, when washed with water only on the animal's back or on the skin; and (2) all wool, not scoured, having a clean content in excess of 77 per centum.

Since the washed wool in question is not included within the statutory definition, *supra*, plaintiff's claim must be rejected. The classification of the collector being presumptively correct, we hold the commodity in question to be so dutiable.

The protest is overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.