(C. D. 1317)

R. C. A. Victor Div. Radio Corp. of America *v.* United States

United States Customs Court, Second Division

(Decided April 5, 1951)

*Sharretts, Hillis & Paley (Howard C. Carter* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General *(Arthur R. Martoccia* and *Richard B. FitzGibbon,* special attorneys), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Rao, Judge: These two suits present for our determination the question of the proper classification of certain paper containers for

phonograph or gramophone records, imported together with the records for which they serve as coverings. The collector of customs at the port of New York classified said containers as printed paper envelopes, pursuant to the provisions of paragraphs 1408 and 1409 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, 74 Treas. Dec. 253, T. D. 49753, or the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and assessed duty thereon at the rate of 35 per centum ad valorem. It was claimed in the protests that said articles are the usual containers of records, customarily employed for covering or transporting them, and therefore, that their cost or value is not dutiable. Alternatively, the claim was made that the articles, if dutiable, should be treated as entireties and assessed at only 15 per centum ad valorem, the rate of duty applicable to records, by virtue of the provisions of paragraph 1542 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, *supra*, or the General Agreement on Tariffs and Trade, *supra*.

However, at the trial the contention of the plaintiff was more specifically described as being that the merchandise in issue, as the usual containers of merchandise subject to an ad valorem rate of duty, should pay the same rate as the articles which they enclose.

The pertinent provisions of the Tariff Act of 1930 are as follows:

PAR. 1408. Paper envelopes, filled or unfilled, whether the contents are dutiable or free, not specially provided for shall be subject to the same rate of duty as the paper from which made and in addition thereto, if plain, 5 per centum ad valorem; if bordered, embossed, printed, tinted, decorated, or lined, 10 per centum ad valorem; if lithographed, 30 per centum ad valorem: *Provided*, That paper envelopes which contain merchandise subject to an ad valorem rate of duty or a duty based in whole or in part upon the value thereof shall be dutiable at the rate applicable to their contents but not less than the rates provided for herein.

The rate of duty on printed envelopes was reduced to 5 per centum ad valorem by the trade agreement with the United Kingdom, *supra*, and the General Agreement on Tariffs and Trade, *supra*.

PAR. 1409. * * * paper not specially provided for, 30 per centum ad valorem.

Paragraph 1542 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, *supra*, provides as follows:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 1542 | Phonograph, gramophone, or graphophone records, not specially provided for | 15% ad val. |

The modification of said paragraph 1542 in T. D. 51802, *supra*, is substantially the same as that appearing in the trade agreement with the United Kingdom, which is hereinabove quoted.

In view of the explicit language of paragraph 1408, *supra*, which levies a duty upon paper envelopes, whether or not they are filled and whether their contents are dutiable or free, the familiar principle that the usual coverings of merchandise subject to an ad valorem rate of duty are dutiable at the same rate as the merchandise which they cover, does not obtain in instances where the usual covering of imported merchandise is in fact an envelope of paper. It is therefore apparent that the query here is whether or not the articles at bar are envelopes.

In support of the proposition that they are not, plaintiff produced the testimony of four witnesses, and also offered in evidence, as plaintiff's collective illustrative exhibit 1, several samples representing the involved merchandise. No testimony was adduced on behalf of the defendant.

An examination of the samples reveals that they are folded sheets of brown paper which have been pasted or glued together at the sides, and are open at the end opposite the fold. In the center of each of these articles there has been cut out of the surface of each side a circular space measuring variously 3 to 3½ inches in diameter. The articles are of two sizes, approximately 10 inches square and 12 inches square, and are apparently designed to fit 10-inch and 12-inch phonograph or gramophone records.

According to the testimony of Edgar C. Forman, who is in charge of imported records for the plaintiff and has been familiar with the merchandise in question for 25 years, these articles are used to protect records from scratching, dirt, and dust, and to his knowledge, that is their only use. He stated further that he has never imported records which were not enclosed in articles like the samples in evidence, and that when the records are sold in this country, they are always enclosed in these containers unless they are inserted in albums.

A witness, who for 30 years has been engaged in the manufacture of envelopes, specialty envelopes, and specialty containers, testified that articles like plaintiff's collective illustrative exhibit 1, of which his company manufactures better than a hundred million a year, are commonly referred to as sleeves or jackets. They are also referred to as shucks. In the interpretation of this witness, an envelope is something that has a flap which can be turned over and sealed and would completely enclose the contents; it would be something suitable for mailing or sealing merchandise. When asked whether collective illustrative exhibit 1 was an envelope, the witness stated:

I hardly feel qualified to answer that to give you the proper definition. The line of demarcation is very close between the two. I can only say we have always referred to them as sleeves and jackets. I stated before my interpretation and our interpretation of an envelope is something that will completely enclose and seal the contents, which cannot be done with an open top article like Collective Illustrative Exhibit 1. That is just experience, one man's experience answering that question.

Other witnesses engaged in the sale of records at retail testified that articles like collective illustrative exhibit 1 are used only to contain records; that the overwhelming proportion of records sold are enclosed in containers of this type; and that these containers are referred to generally as sleeves or jackets. They are never referred to as envelopes. When records are sold at retail, the record enclosed in the sleeve is put in an envelope or a bag. A customer does not usually walk out of a record shop without a further wrapping than the instant paper container. This additional wrapping is usually either an envelope, so called because it has a flap, or a paper bag. In the opinion of these witnesses, a record envelope would be this latter container rather than the merchandise at bar.

Since there was no attempt by either of the parties to prove commercial designation of the term "envelope," we are here concerned solely with the common meaning of that word, the ascertainment of which is, of course, a matter of law for the court's determination.

The word "envelope" is defined in Webster's New International Dictionary of the English Language, 2d Edition (1948) as:

1. That which envelops: a wrapper. 2. a cover or wrapper of a document, esp. a piece of folded, gummed paper to enclose a letter.

In Funk & Wagnalls New Standard Dictionary of the English Language, 1942 edition, we find the following:

envelop, } envelope,} *n.* 1. A case or wrapper, usually of paper with gummed edges for sealing, in which a letter or the like may be sent through the mail or enclosed for safety. 2. Any enclosing integument or covering; a wrapper.

It thus may be seen that the lexicons provide both a broad and a limited definition of the term we must here define. It becomes necessary, therefore, to ascertain, if we can, whether Congress, in employing the word "envelope" in the particular context in which we find it in paragraph 1408, *supra*, intended the one or the other. We are of opinion that certain prior judicial interpretations of the term "envelope" have an important bearing upon that question.

In the case of *William Meyer & Co.* v. *United States*, T. D. 12788, G. A. 1384, the Board of General Appraisers (now the United States Customs Court) was concerned with the classification of an importation of colored paper bags or containers, each with an open space in one

surface designed for the display of its contents. These articles were intended to be used especially for holding and exhibiting embroideries. It was there held that such articles were not envelopes within the meaning of the provision therefor in paragraph 421 of the Tariff Act of 1890, for the reason that "they are not designed for, nor could they be put to, any of the uses for which the envelopes of commerce are intended to be employed; that is to say, for covering and holding letters, documents, etc., for transmission through the mails,    *    *    *."

Some 30 years later, the Assistant Secretary of the Treasury advised the collector of customs at the port of New York to follow the reasoning of the board, in the decision cited, in the classification of lithographic containers used for holding articles such as ladies' hair nets, etc. (41 Treas. Dec. 273, T. D. 39102). It thus resulted that merchandise of that type was not classified pursuant to the provision for paper envelopes in paragraph 327 of the Tariff Act of 1913.

Similarly, in the case of *Hensel, Bruckmann & Lorbacher* v. *United States*, 15 Treas. Dec. 637, Abstract 19180, it was held that certain bag-like covers for photographs were not envelopes within the meaning of that term as used in paragraph 399 of the Tariff Act of 1897. The board there observed that although the articles in issue opened at the side instead of at the top, since they had no flap, they more closely resembled paper bags than envelopes.

It seems to us that the impelling factor which prompted the conclusion reached in each of the foregoing cases was that the particular merchandise in question could not be used for holding or containing letters or documents nor for transmission through the mails. Obviously, the articles at bar, though fitting the broad conception of the term "envelope," in that they may fairly be described as wrappers, could not meet the test applied in the cited decisions.

That Congress intended such articles only as could be defined by the narrower meaning of the word "envelope" seems clearly indicated by the decision in the case of *United States* v. *Graser-Rothe Co. et al.*, 11 Ct. Cust. Appls. 493, T. D. 39631, wherein the merchandise, described as paper containers for phonograph disks, was apparently identical with that here involved. The court there found that it had been established by the evidence adduced at the trial that the paper containers were definitely, uniformly, and generally bought and sold in the trade as record envelopes. Upon the basis of that proven commercial designation, the merchandise was held to be paper envelopes within the provision therefor in paragraph 327 of the Tariff Act of 1913.

It needs no protracted discussion of the rules of commercial designation for the conclusion that implicit in a holding that there is a general,

uniform, and definite commercial meaning of a tariff term, is a finding that such meaning necessarily differs from the common meaning thereof. *Passaic Worsted Co. et al.* v. *United States*, 17 C. C. P. A. (Customs) 459, T. D. 43916; *United States* v. *Sheep Shearers Mdse. & Comm. Co.*, 23 C. C. P. A. (Customs) 146, T. D. 48009; *Edward Brenner* v. *United States*, 23 C. C. P. A. (Customs) 190, T. D. 48030. Accordingly, the *Graser-Rothe Co.* case, *supra*, must be contrued as standing for the proposition that paper containers of phonograph records of the kind here involved are not within the common meaning of the term "envelope."

While there is no presumption that commercial designation continues from one tariff act to another, common meaning, once judicially declared, is the binding law of the land until changed by the legislative department. *United States* v. *Jules Raunheim (Inc.) et al.*, 17 C. C. P. A. (Customs) 425, T. D. 43867.

It is our considered opinion that the successive changes in the provisions for paper envelopes in the 1913, 1922, and 1930 tariff acts were not devised by Congress to alter or enlarge the intrinsic meaning of the word itself. In each of the paragraphs providing for this merchandise—paragraph 327 of the Tariff Act of 1913, paragraph 1308 of the Tariff Act of 1922, and paragraph 1408 of the present act, *supra*— the language used for the designation of the article is "Paper envelopes." Subsequent modifying expressions in the various provisions, while descriptive of the condition and composition of the "paper envelopes" intended to be covered by their respective phraseology, do not in any sense reflect upon the meaning to be ascribed to the subject article.

Support for this proposition may be found in the expression by the legislators in enacting paragraph 1408, *supra*, of their intent in adding to the language which appeared in paragraph 1308 of the Tariff Act of 1922. In the report of the proposed amendments to H. R. 2667, printed for the use of the Committee on Ways and Means, House of Representatives, page 44, the following appears:

To the provision for envelopes is added "envelopes, filled or unfilled, whether the contents are dutiable or free" and the proviso, "That paper envelopes which contain merchandise subject to an ad valorem rate of duty or a duty based in whole or in part upon the value thereof shall be dutiable at the rate applicable to their contents, but not less than the rates provided for herein." The intent of the added phraseology is to make dutiable envelopes for mailing lithographic greeting cards and other similar commodities. Under the present law the packing for lithographed goods is not dutiable.

It is evident from the foregoing that Congress in adding to the provision for paper envelopes was not of a mind to vary its under-

standing of the meaning of the word as being an article suitable for mailing. We do not need the testimony of any witness to establish for us that the containers at bar would not be suitable nor could they be used at all in the mailing of any articles, although there is in fact evidence of record to that effect. The instant merchandise, does not, in our opinion, belong to the class of articles intended to be covered by the provision in paragraph 1408, *supra,* for paper envelopes. Accordingly, the contention of the plaintiff that these articles are the usual coverings of merchandise subject to an ad valorem rate of duty and should be assessed at the same rate is sustained. We hold that the instant articles are properly dutiable at 15 per centum ad valorem under paragraph 1542, *supra,* as the usual containers of phonograph or gramophone records which are provided for in said paragraph, as modified by the applicable trade agreements, *supra.* Judgment will be entered accordingly.