BEFORE THE SECOND DIVISION, APRIL 1, 1953

**No. 57238.**—Radio Corp. of America, RCA Victor Division *v.* United States, protest 168532–K (New York).

RAO, Judge: This case presents the question of the proper classification of certain paper containers, imported with and as coverings for phonograph or gramophone records. The collector's assessment of duty upon the records at the rate of 15 per centum ad valorem, pursuant to the provisions of paragraph 1542 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, as parts of phonographs, gramophones,

etc., and the like, is not here contested.    The claim of the protest is limited to the collector's action in classifying said containers within the provisions of paragraph 1408 of said act, as modified by said trade agreement, and paragraph 1409 of said act, as paper envelopes, filled or unfilled, printed, and composed of paper, not specially provided for, and his assessments of duty thereon at the rates of 5 per centum and 30 per centum ad valorem.    It is urged that said articles, as the containers customarily and usually used for covering and transporting records, are the usual containers therefor, and, as such, are dutiable at the same rate at which the records were assessed.

The tariff provisions appropriate to this proceeding read as follows:

Paragraph 1408, as modified by the General Agreement on Tariffs and Trade, *supra*:

Paper envelopes, filled or unfilled, whether the contents are dutiable or free, not specially provided for_____ — The same rate of duty as the paper from which made and in addition thereto:

\*      \*      \*      \*      \*      \*      \*

If bordered, embossed, printed, tinted, decorated, or lined_____ — 5% ad val.

Paragraph 1409:

\* \* \* paper not specially provided for, 30 per centum ad valorem.

Paragraph 1542, as modified by said trade agreement:

Phonographs, gramophones, graphophones, dictophones, and similar articles, and parts thereof, not specially provided for_____ — 15% ad val.

Implicit in plaintiff's position, in view of the specific language in said paragraph 1408, is the contention that the articles at bar are not envelopes within the common meaning of that term as it appears in the provision, and issue has been joined on that basis, neither party having raised the question of commercial designation.

The query to which we are thus required to address ourselves was previously posed by the same plaintiff, in connection with identical merchandise, in the recently decided case of *R. C. A. Victor Div. Radio Corp. of America* v. *United States*, 26 Cust. Ct. 154, C. D. 1317.    We there described the involved articles in the following manner:

An examination of the samples reveals that they are folded sheets of brown paper which have been pasted or glued together at the sides, and are open at the end opposite the fold.    In the center of each of these articles there has been cut out of the surface of each side a circular space measuring variously 3 to 3½ inches in diameter.    The articles are of two sizes, approximately 10 inches square and 12 inches square, and are apparently designed to fit 10-inch and 12-inch phonograph or gramophone records.

The evidence in the decided case, which has been incorporated into the record in the instant one, established that phonograph records are always imported in these containers, which are used solely to protect the records from scratching, dirt, and dust; that the containers continue as coverings for records when they are sold in this country, except on the small number of occasions when the records are encased in albums; that they are referred to in the trade as sleeves, jackets, or shucks, but never as envelopes; and that a customer does not usually walk out of a record shop without a further wrapping than the instant container.

A witness for the plaintiff—no testimony was proffered by the defendant in the incorporated case—who had been engaged in manufacturing envelopes, specialty envelopes, and specialty containers for 30 years stated his definition of an envelope in the following language:

Our usual interpretation of an envelope is something that has a flap which can be turned over and sealed and completely enclose the contents. That we really term an envelope, which would make it suitable for mailing or sealing up merchandise, and things of that nature.

After examining into the definitions of the word "envelope" in several lexicons, we found that it was not clear from the context in which it appears in paragraph 1408 whether Congress intended the word to refer to any enclosing integument, covering, or wrapper, or meant to restrict its meaning to "a case or wrapper, usually of paper with gummed edges for sealing, in which a letter or the like may be sent through the mail or enclosed for safety."

Upon the basis of prior construction of earlier tariff provisions for paper envelopes in the cases of *William Meyer & Co.* v. *United States*, Synopsis of Decisions, 1892, Vol. 1, p. 585, T. D. 12788, G. A. 1384, and *Hensel Bruckmann & Lorbacher* v. *United States*, 15 Treas. Dec. 637, Abstract 19180, the action of the Treasury Department in following the decision in the *Meyer* case, *supra* (41 Treas. Dec. 273, T. D. 39102), and the report of the proposed amendments to H. R. 2667, printed for the use of the Committee on Ways and Means, House of Representatives, we held, in the incorporated case, that the provision for paper envelopes in paragraph 1408, *supra*, was limited to such articles only as were suitable for use in holding or containing letters or documents in their transmission through the mails.

In reaching this conclusion, we also noted that inasmuch as it was held in the case of *United States* v. *Graser-Rothe Co. et al.*, 11 Ct. Cust. Appls. 493, T. D. 39631, wherein was involved apparently similar merchandise, that commercial designation of record containers as envelopes was established, it must be presumed that such containers were not within the common meaning of the word. We see no reason for a departure from this construction of the *Graser-Rothe* case, *supra*. Both in the decision of the trial court (42 Treas. Dec. 362, Abstract 45262) and in the decision of the appellate tribunal, it was made abundantly clear that the case turned upon the question of commercial designation. Since common and commercial meanings are presumed to be the same, no occasion arises for proof of commercial designation unless it is sought to show that there is, in the trade and commerce of the United States, a generally accepted commercial understanding which differs from common meaning. *Passaic Worsted Co. et al.* v. *United States*, 17 C. C. P. A. (Customs) 459, T. D. 43916; *Nylos Trading Company* v. *United States,* 37 C. C. P. A. (Customs) 71, C. A. D. 422.

Neither do we consider that the testimony introduced by the defendant at the trial of this case warrants any different conclusion in the matter than the one we have already reached. Since the common meaning of the term "envelopes" was construed and determined in our previous decision "that matter, therefore, thus becomes *stare decisis*, and proof of the common meaning of the term, as in the case at bar, can not effect a change in that construction," *Jas. Akeroyd & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 440, T. D. 42641. See also *United States* v. *Sheep Shearers Mdse. & Comm. Co.*, 23 C. C. P. A. (Customs) 146, T. D. 48009.

Moreover, taking defendant's new evidence at its broadest implication, there has simply been established the fact that the containers at bar were known in the trade, not only by the names, sleeves, jackets, shucks, but also as record envelopes. Witness Sellars, who had 42 years' experience in producing envelopes, could offer no more precise definition of the word than that they are "containers from paper or other materials." He testified that envelopes come in all sizes and shapes, for numerous purposes; some have flaps and some do not; some are mailable, including so-called outlook envelopes; others, such as insurance policy envelopes, bank passbook envelopes, payroll envelopes, and merchandise envelopes, are not suitable for mailing. It is significant, however, that he also stated that due to certain conditions "set down" by the post office "any envelope which has a flap

can be mailed," and when asked to answer a question concerning types of envelopes which can not be transmitted through the mails, said:

There are many types which you wouldn't mail for one reason or another. In the first place, you wouldn't attempt to mail this through the mail unless you wrapped it again in some paper and put an address on it, but it is not a mailing envelope any more than a bank pass book is a mailing envelope; any more than the countless types of merchandise envelopes that are used by department stores, mail order houses, which are designed and built to carry some article of merchandise. Now, *envelopes* could be mailed. All you'd have to do is to stick down the flap and mail them. [Italics supplied.]

Witness Meyer, who had been in the envelope business for 40 years, was of opinion that whether or not an article is an envelope depends upon the method of its construction. If the article is made on a bag machine, and the entire web of the paper is consumed in producing it, the article is a bag. If it is made on an envelope machine, and there is disposable waste in its construction, the product is an envelope. He admitted, however, that what the public generally assumes to be an envelope is the ordinary 8¾-inch letter type, and that a person requesting the article at bar would have to specify that he wished a *record* envelope.

The inability of these witnesses, experienced as they were, to provide a comprehensive, definitive meaning for the term here under construction tends to confirm our view that an ambiguity exists, and that the extrinsic aids heretofore considered resolve the doubt in favor of the meaning which we have already found.

In view of the foregoing considerations, we hold that the containers at bar are the usual coverings of phonograph or gramophone records, and, as such, dutiable at the same rate, to wit, 15 per centum ad valorem, as is applicable to the records, under the provisions of paragraph 1542, as modified, *supra*. The claim in the protest to that effect is, therefore, sustained. Judgment will be entered accordingly.